622 So.2d 1264 (1993)
Cathy ASH (Vead),
v.
Michael ASH.
No. 92-CA-0495.
Supreme Court of Mississippi.
August 26, 1993.
Wayne Dowdy, Magnolia, for appellant.
Philip A. LeTard, Vidalia, LA, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
SMITH, Justice, for the Court:
This case comes on appeal to this Court following the decision of a Special Chancellor in Adams County, Mississippi, to modify a child custody decree and change custody of the seven-year old child from the mother to the father. The Special Chancellor found that this war over visitation, spanning seven years with no end in sight, was a material change in circumstances. Finding further that this change was adverse to the child, the Special Chancellor determined a change of custody would be in the child's best interest. The only issue of merit before the Court is whether or not there was a material change in circumstances which adversely affected the welfare of the child. Keeping in mind our limited scope of review in such matters and being unable to say the decision was manifestly wrong, we affirm.

FACTS
Michael and Cathy Ash were granted a divorce on the ground of irreconcilable differences *1265 on August 28, 1986, in the Chancery Court of Adams County. A property settlement agreement between the parties was approved by the court and incorporated into the final divorce decree. That written agreement provided for primary custody of the parties' only child, Matthew, then age one (1) year, to rest with the mother. Child support and liberal visitation with the father were also provided.
The divorce proved to be only the beginning of the matter of Ash v. Ash. Almost immediately, the onslaught of pleadings began, all stemming from visitation problems. A temporary restraining order was issued against Cathy in June 1989, prohibiting her from disobeying the agreed upon visitation provisions. Following further difficulties, the original provisions for visitation were modified by consent of the parties and approved by the chancery court. Only five (5) days later, another temporary restraining order was issued against Cathy, granting Michael immediate visitation with his son.
In October 1990, an emergency order was necessary for Michael to secure a one (1) day, overnight visit. Thereafter a hearing to adjust and establish specific visitation rights was scheduled. Prior to the hearing the former chancellor recused himself and this Court specially appointed Chancellor George Warner to preside. In July 1991, Special Chancellor Warner attempted to finally settle the matter by requesting statements from each party and, with reference thereto, again adjusting the visitation schedule. Three months later, his visitation again denied, Michael filed a Motion to Change Custody and to Find in Contempt. As both parties resided out of state, the Special Chancellor again directed each side to submit written statements supporting and opposing the motion. Michael did so. Cathy did not. A judgment changing custody to the father was issued in December 1991. After Cathy denied ever being notified of that proceeding the matter was reopened in a full evidentiary hearing on April 13, 1992.
The battle lines were drawn, and, not surprisingly, the parties, each with a team of supporting witnesses in tow, gave conflicting testimony on the reasons Michael was frequently denied visitation. Virtually every witness did agree that visitation had been a constant problem for six years. Cathy testified to unpaid medical bills, and various incidents involving her former husband's alleged drinking problem; Michael denied such allegations and claimed Cathy was intent on denying him any relationship with his son and fabricated endless excuses to accomplish this result. Whatever the reasons, the testimony clearly indicated visitation, including communication by telephone, had not proceeded as the original or adjusted visitation agreements had provided.
At the conclusion of the hearing, the Special Chancellor, in a detailed thirty-one (31) page opinion outlining the history of the case, found that Cathy's continued refusal to allow Michael to visit with his son was a material change of circumstances. The Special Chancellor determined the child had been adversely affected and concluded it would be in Matthew's best interest to have a relationship with both parents. The court allowed the order changing custody to the father to stand. Cathy was given the same visitation rights as Michael had formerly been granted.
From the judgment changing custody, Cathy appeals and asserts two assignments of error, only one of which has merit and warrants discussion:
I. WHETHER THERE WAS EVIDENCE OF A MATERIAL CHANGE IN CIRCUMSTANCES WHICH ADVERSELY AFFECTED THE WELFARE OF THE CHILD

LAW
The law with regard to a modification of a decree for child custody is well-settled. There are two basic prerequisites:
First, the moving party must prove by a preponderance of the evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, *1266 if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody.
Pace v. Owens, 511 So.2d 489, 490 (Miss. 1987) (emphasis in original)
Yet not every change in circumstances warrants a change in custody. The `totality of the circumstances' must be considered. Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984), citing Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss. 1983). This Court has stated:
Even though the chancellor finds a material adverse change in circumstances, a change in custody is not automatic. That finding is merely the first step, the one which then authorizes and indeed challenges the chancellor to then go forward and determine whether the best interests of the child justify a change of custody.
Tucker, 453 So.2d at 1297.
Clearly, a decision to change custody, perhaps more so than an original custody determination, must not be made hastily or without ample justification. A chancellor has numerous guidelines to consider in this most challenging of decisions. We have said repeatedly that a child is entitled to "the stabilizing influence of knowing where home is." Bowden v. Fayard, 355 So.2d 662, 664 (Miss. 1978). To that end, we have stated that "children do not need to be bounced back and forth between their parents like a volleyball." Tucker, 453 So.2d at 1298. On the other hand, we have taken the view that a non-custodial parent's right to visitation is a "right more precious than any property right." Mord v. Peters, 571 So.2d 981, 983 (Miss. 1990). One parent, in an effort to continue doing battle following the finality of a divorce, cannot be permitted to unilaterally deny the other's right to visit with his child. At the same time, "a change in custody will not be made for the purpose of rewarding one parent or punishing the other." Tucker, 453 So.2d at 1297. Above all, in "modification cases, as in original awards of custody, we never depart from our `polestar consideration: the best interest and welfare of the child.'"
Marascalco v. Marascalco, 445 So.2d 1380, 1382 (Miss. 1984), citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983).
The Special Chancellor in the case sub judice was in the unenviable position of resolving a dispute which two prior chancellors and six attorneys, in more than ten (10) court proceedings, tackled and could not settle. Whether Cathy's attitude and actions would have changed had she previously been held in wilful contempt and housed in the county jail, will forever remain unknown. The better rule would be for a chancellor to enforce contempt orders through incarceration, when necessary, to insure compliance with custody provisions rather than resorting to a change of custody. Special Chancellor Warner, in trying to arrive at a practical solution to an extremely difficult and complex case, found that this case had long since passed contempt considerations. He found a change of custody would solve this difficult case. Under the fact of this case, he was correct. However, this case should not be considered as establishing precedent for the taking of such drastic action in visitation disputes. In custody battles, the best interest of the child remains paramount and the central focus for a chancellor should always be on how a given situation may adversely impact upon the child. It is appropriate to consider here that our limited scope of review directs that "[w]e will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child." Yates v. Yates, 284 So.2d 46, 47 (Miss. 1973).
Special Chancellor Warner found that Cathy's continued refusal to allow Michael to visit with his son was a material change in circumstances from the situation that existed at the time of the divorce. He found the divorce decree and agreement to custody and visitation was binding and enforceable, and not subject to any effort by the mother to modify it on her own. He further found that the right to liberal visitation was clearly contemplated by that agreement, and that this right had been deliberately denied the father by the mother. *1267 There was testimony that Matthew did not see his father, despite specific court orders, for months at a time. Upon the mother's moving outside Mississippi, she refused to provide the father with her new address. During 1991, Matthew saw his father for the 4-week summer period and on three weekends. From November 1990 until February 1991 he visited with his father one-half of one day, and on 26 occasions Michael was not permitted to speak to his son by telephone as scheduled.
The Special Chancellor stated he had reviewed the totality of the circumstances and found that Matthew had been adversely affected. The evidence showed the chronic visitation dispute subjected the child to repeated confrontations, at least one extremely physical. It became necessary for Michael to have someone accompany him in order to substantiate these episodes of refusal to allow visitation in accordance with the court order. Further, the evidence showed it was frequently necessary to summon a member of the sheriff's department to assist Michael in having Matthew brought from the house and into his vehicle. The Special Chancellor expressly found "it's the cumulative effect of willful disobedience of Court Orders [by Cathy Ash Vead] that's so important." Chancellor Warner, in allowing the custody to remain with the father, as changed, expressly stated:
I find upon clear and convincing evidence that the mother's interference with the father's visitation has been a material change of circumstances that cannot be corrected by contempt; that it is and does adversely affect the child and that it is in the child's best interest that he live with his father.

CONCLUSION
It is evident that the Special Chancellor kept in mind the best interest of Matthew Ash in reaching his decision. In particular, he found that implicit in the divorce judgment allowing visitation was a finding that the non-custodial parent, Michael Ash, was fit to associate with his child, and the best interest of the child is fostered by this association. Considering our limited scope of review and the Special Chancellor's specific findings, supported by the record, we cannot say his decision was manifestly wrong and so are bound by his findings. Veselits v. Cruthirds, 548 So.2d 1312, 1316 (Miss. 1989); Torrence v. Moore, 455 So.2d 778, 780 (Miss. 1984).
Finally, we note in hindsight that the decision appears to have been a good one. The record indicates the mother exercised visitation with her son, without incident, on the three scheduled weekends immediately prior to the final hearing. We urge the parties to continue this positive trend and allow the child to develop a close relationship with both his parents.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.