767 So.2d 1078 (2000)
Karen MITCHELL, Appellant,
v.
James M. MITCHELL, Appellee.
No. 1999-CA-01431-COA.
Court of Appeals of Mississippi.
September 26, 2000.
*1079 Edwin H. Roberts, Jr., Oxford, Attorney for Appellant.
Omar D. Craig, Oxford, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., IRVING, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY AND FACTS
¶ 1. James and Karen Mitchell were married July 17, 1976, and two children were added to this union, Katie in 1983 and Molly in 1990. The Mitchells were granted a divorce on December 7, 1993, in the Lafayette County Chancery Court. James, a physician, eventually relocated to Ocean Springs, Mississippi. Karen moved to Connecticut as an assistant professor at the University of Connecticut and now has a private counseling practice there.
¶ 2. In the interim from the divorce to the present, several judicial proceedings regarding custody of the two children have occurred in both Mississippi and Connecticut courts. Pursuant to the divorce settlement agreement, joint physical and legal custody of the children was vested with each parent. After Karen relocated from Mississippi to her employment in Connecticut, the court granted James's complaint for modification of divorce decree in the summer of 1994. With this modification, the court awarded permanent physical custody of the two daughters to James, set a visitation schedule for the children to see their mother, and arranged for payment for the transportation costs to fly the girls to visit their mother in Connecticut.
¶ 3. No further judicial intervention took place until June of 1998. Shortly after the children arrived in Connecticut for their summer visitation with their mother, Karen notified James that Katie would not return to his custody at the end of the summer. On June 29, 1998, James filed a complaint in the Lafayette County Chancery Court to enjoin Karen from keeping Katie in Connecticut. Service on Karen was had and the return receipt filed on July 23, 1998.
¶ 4. In response to James's complaint, on August 14, 1998, the Lafayette County Chancery Court entered a mandatory injunction enjoining the Connecticut court from taking any action as the Lafayette County Chancery Court retained jurisdiction over this matter, and instructing Karen to abide by the 1994 order in the same court. The chancellor's order stated that the Lafayette County Chancery Court retained jurisdiction over the matter of child custody and that Karen must comply with the order requiring Katie's return to James at the summer's end.
¶ 5. On June 25, 1998, Karen filed an action in Superior Court, Judicial District of Tolland, Connecticut, requesting that the court modify the 1994 Lafayette County *1080 Chancery Court decree and change custody of Katie from James to herself. The Connecticut court would not grant such motion as Katie had not lived in Connecticut the required six-month residency period.
¶ 6. Karen did not return Katie to James's custody at the end of the summer 1998 visitation in spite of the August 14, 1998 order. James thereafter filed a complaint for citation of contempt on September 29, 1998, requesting the Lafayette County Chancery Court take action to return Katie to his custody. Service on Karen via certified mail was returned and filed on October 29, 1998. Several continuances were granted, the hearing ultimately not taking place until August of the next year. During this time of continuance, Karen filed in December 1998 in the Connecticut court another motion to modify the custody arrangement. Karen requested with this motion that the judgment of the Lafayette County Chancery Court be modified from James's having sole custody of the girls to Karen's being awarded joint custody, primary residency of the two girls, with James paying child support and having reasonable rights of visitation with the girls. The court granted such motion as to Katie at a January 25, 1999 hearing in Connecticut, addressed only certain visitation arrangements as to Molly, and declared the judgments of the State of Mississippi dated December 7, 1993 and August 1, 1994, to be in full force and effect in all other respects. Both Karen and James were present and represented by counsel, and stipulated to these changes.
¶ 7. James filed a complaint for modification on April 20, 1999, in the Lafayette County Chancery Court. A Rule 81 summons on Karen was executed and return filed on May 3, 1999. Karen, filed a motion to dismiss on May 14, 1999, challenging subject matter and in personam jurisdiction, venue and sufficiency of process and sufficiency of service of process. The Lafayette County Chancery Court overruled Karen's motion on June 10, 1999, and set the hearing on the merits of James's complaint for August 3, 1999. While continuing her jurisdictional objections, Karen filed an answer and counterclaim for contempt and custody on July 30, 1999.
¶ 8. On August 5, 1999, the Lafayette County chancellor entered an order stating that court maintained jurisdiction over this matter as it had since the original 1993 divorce decree. The order also awarded joint legal custody to both Karen and James with Karen having primary physical custody of Katie and James having primary physical custody of Molly, each paying the other child support. Additionally, both were ordered to share equally the costs of transporting the girls from parent to parent for visitation. The chancellor declared the Connecticut proceedings "null and void," and stated that Lafayette County retains jurisdiction over this matter as it has done since the original divorce decree of December 7, 1993. With this appeal, Karen maintains the chancellor had no jurisdiction over this matter to make such changes and argues the Connecticut order is valid and controlling in this situation and subject to full faith and credit under the United States Constitution.

ARGUMENT AND DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 9. We state verbatim the issues appellant Karen Mitchell raises in her brief and reply brief:
A. THE CHANCERY COURT ERRED WHEN IT ASSUMED JURISDICTION OVER A NON-RESIDENT CHILD IN A CUSTODY DISPUTE WHERE A FOREIGN COURT ALREADY HAD CONCURRENT JURISDICTION.
1. LAFAYETTE COUNTY CHANCERY COURT DID NOT SATISFY THE REQUIREMENTS UNDER MISS. CODE ANN. § 93-23-5(1) *1081 (1994) TO ASSUME JURISDICTION;
2. LAFAYETTE COUNTY IS AN INCONVENIENT FORUM WHERE NONE OF THE PARTIES INVOLVED LIVE WITHIN FIVE HOURS OF THE FORUM;
3. THE CHANCERY COURT MANIFESTLY ERRED BY REFUSING TO RECOGNIZE AN AGREED ORDER OF THE SUPERIOR COURT OF CONNECTICUT, THEREFORE VIOLATING THE FULL FAITH AND CREDIT CLAUSE.
B. EVEN IF CHANCERY COURT HAD JURISDICTION, THE COURT MANIFESTLY ERRED IN ITS MODIFICATION DECREE.
1. THE FATHER HAD UNCLEAN HANDS AT THE TIME OF HIS PETITION, THEREFORE THE CHANCERY COURT ERRED IN GRANTING THE FATHER RELIEF;
2. THE CHANCERY COURT MANIFESTLY ERRED BY REDUCING VISITATION OF THE PARTIES AND DENYING KAREN PRIMARY PHYSICAL CUSTODY OF MOLLY WITHOUT ANY SUBSTANTIAL FINDING OF FACT.
C. ENJOINING THE PARTIES FROM BRINGING SUIT IN ANY CONNECTICUT COURT EFFECTIVELY DENIES THE PARTIES' ACCESS TO THE COURTS AND VIOLATES THEIR RIGHT TO DUE PRECESS.
D. THE LOWER COURT ERRED IN ASSESSING KAREN CHILD SUPPORT FOR MOLLY, AS KAREN HAD ALREADY BEEN ASSESSED CHILD SUPPORT FOR MOLLY BY THE CONNECTICUT COURT.
¶ 10. We first look to our standard for reviewing the decision of a chancery court in a modification proceeding.
Our law, with regard to a modification of a decree for child custody, is well settled. This Court's standard for modification of child custody is found in Ash v. Ash, 622 So.2d 1264 (Miss.1993). First, the moving party must prove by a preponderance of the evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Id. at 1265. Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody. Id. at 1266.
Smith v. Jones, 654 So.2d 480, 492 (Miss. 1995).
¶ 11. Additionally, we look to the standard for reviewing the decision of a chancery court in accepting or declining jurisdiction under the UCCJA.
The decision on whether to accept or decline jurisdiction under the UCCJA is a finding entitled to review under the manifest error/clearly erroneous standard. Johnson v. Ellis, 621 So.2d 661, 667 (Miss.1993). "Subject matter jurisdiction deals with the power and authority of a court to consider a case. Matter of Adoption of R.M.P.C., 512 So.2d 702, 706 (Miss.1987). As such, subject matter jurisdiction may not be waived and may be asserted at any stage of the proceeding or even collaterally. Id." Hunt v. Hunt, 629 So.2d 548, 551 (Miss. 1992).
E.M.C. v. S.V.M., 695 So.2d 576 (Miss. 1997). For the reasons stated in this opinion, we find that jurisdiction was not proper in the Connecticut court and, thus, find the chancellor did not abuse his discretion is refusing to recognize the Connecticut judgment. Accordingly, we affirm the Lafayette County Chancery Court's ruling on this matter.
ANALYSIS OF THE ISSUES PRESENTED
A. THE CHANCERY COURT ERRED WHEN IT ASSUMED JURISDICTION *1082 OVER A NON-RESIDENT CHILD IN A CUSTODY DISPUTE WHERE A FOREIGN COURT ALREADY HAD CONCURRENT JURISDICTION.
1. LAFAYETTE COUNTY CHANCERY COURT DID NOT SATISFY THE REQUIREMENTS UNDER MISS. CODE ANN. § 93-23-5(1) (1994) TO ASSUME JURISDICTION.
¶ 12. Karen argues the Lafayette County Chancery Court improperly exercised jurisdiction over Katie, stating that Katie had lived in Connecticut with Karen for ten months, thus rendering Connecticut her "home state," that Katie's life is now in Connecticut, and that no emergency existed whereby the chancellor could exercise jurisdiction (comparing to Curtis v. Curtis, 574 So.2d 24 (Miss.1990) where the children were wrongfully taken out of state). Karen relies on a portion of Miss.Code Ann. § 93-23-5(1) (Rev. 1994) which states in full:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one (1) contestant, have a significant connection with the state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or
(c) The child is physically present in this state and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b) or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
Miss.Code Ann. § 93-23-5 (Rev. 1994).
¶ 13. Karen claims that Katie had lived for ten months outside of Mississippi, thus rendering her a resident of Connecticut, and that absent her ties to her father, she had no connections to Mississippi.
As used in this chapter ... "Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months.... Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
Miss.Code Ann. § 93-23-3(f) (Supp. 1999).
¶ 14. While Karen raises the "home state" point to show that the Lafayette County Chancery Court should not retain jurisdiction in this matter, actually these statutes indicate why Connecticut could not obtain jurisdiction. According to the statutes, the time a person is temporarily away from a state, such as for ordered visitation, or is removed or retained out of state, counts as part of the six-month period in favor of the state from which the person is absent or has been removed or retained. Curtis v. Curtis, 574 So.2d 24 (Miss.1990), stands for the proposition that *1083 public policy underlying the UCCJA insists that a state deny jurisdiction over a child wrongfully taken from their home state. In that case, a father kidnaped his children and brought them to Mississippi. He claimed the children had been abused so the chancery court gave temporary custody to the father. However, the Mississippi Supreme Court reversed the subsequent order of permanent custody in the father, relying on Owens v. Huffman, 481 So.2d 231 (Miss.1985), and stating that the six-month rule of the UCCJA did not allow Mississippi to become the home state where the child had been wrongfully brought to this state. "Without hesitation we hold that such court ordered involuntary residence does not generate so much as a single tick of the UCCJA's six consecutive months clock." Curtis, 574 So.2d at 30.
¶ 15. In the unanimous decision of Owens, the Mississippi Supreme Court thoroughly considered this very jurisdictional issue. In that case, a grandmother absconded with her granddaughter to Texas, fraudulently had the mother's parental rights terminated, then moved to Arizona, keeping the child hidden for over two years. Finally, Huffman learned of the child's whereabouts, went to Arizona and, upon advice, signed an agreed order stipulating that custody would be with the grandmother. When the child was visiting her mother in Mississippi, Huffman instituted custody proceedings in Mississippi. The Mississippi Supreme Court ultimately agreed with the chancellor that custody was properly in the Mississippi courts, and that the Arizona decree was not entitled to full faith and credit. The Owens court stated in particular:
Our decision must comport with Article IV., § 1 of the United States Constitution requiring us to give full faith and credit to the judicial proceedings of a sister state. Likewise, we must comply with Title 28, Section 1738A USCA, Parental Kidnapping Prevention Act of 1980 (PKPA), and our own Uniform Child Custody Jurisdiction Act, Miss. Code Ann. § 93-23-1 et seq. (UCCJA).
. . .
While the two Acts are directed to child custody disputes which occur between parents, the conduct of the Mosleys in this case is a striking example of the evil PKPA and UCCJA are designed to discourage and prevent. Thus, two of the main purposes of PKPA were to discourage forum shopping and prevent interstate abductions, or "child snatching" of children for the purpose of obtaining custody.... Likewise, one of the purposes of UCCJA is to deter abductions and other unilateral removal of children to obtain custody awards.
Owens, 481 So.2d at 238-39 (citations omitted).
¶ 16. The court then discussed reasons why the Arizona court did not have jurisdiction under the PKPA or UCCJA. The first reason discussed is that Title 28, § 1738A(g), as well as Miss.Code Ann. § 93-23-11(a), prohibited Arizona from exercising jurisdiction because a child custody proceeding had been commenced in Mississippi prior to the commencement of the Arizona action. Id. at 242. In this case, James's action for contempt was pending in Mississippi prior to Karen's action filed in Connecticut.
¶ 17. Additionally, the Owens court discussed its interpretation of the language and purposes of the PKPA and UCCJA, stating:
[U]nder § 93-23-15 there is a two-tiered guideline for a court in determining whether it shall exercise jurisdiction, the first discretionary, the second mandatory.
The first paragraph provides that if a petitioner has wrongfully taken the child to another state in the absence of any custody decree, the court may decline to exercise jurisdiction.
The second paragraph is mandatory. It states that "unless required in the interest of the child," the court shall not *1084 modify a custody decree of another state if the petitioner has wrongfully removed the child from that state.
. . .
But, if there has been a custody decree awarding custody to one parent, and the other parent wrongfully takes the child to another state and seeks to secure a custody change, the court shall not exercise jurisdiction.
Id. at 243 (citations omitted) (emphasis added).
¶ 18. Karen argues that James actually submitted himself to Connecticut's jurisdiction when he appeared in January 1999 with Karen, their attorneys and a court-appointed mediator in the Connecticut court to set new custody, visitation and support guidelines. The Mississippi Rules of Civil Procedure describe how James's voluntary appearance in Connecticut could have effectively waived his right to now complain in the Mississippi court that the Connecticut court lacked in personam jurisdiction over him.
Any party defendant who is not an unmarried minor, mentally incompetent, or convict of felony may, without filing any pleading therein, waive the service of process or enter his or her appearance, either or both, in any action, with the same effect as if he or she had been duly served with process, in the manner required by law on the day of the date thereof.
M.R.C.P. 4(e). However, in referring to In re Marriage of Hopson, 110 Cal.App.3d 884, 168 Cal.Rptr. 345, 351 (Cal.Ct.App. 1980), the Owens court agreed that:
[T]he res judicata effect of a custody decree was dependent upon the court having personal and subject matter jurisdiction, and the exclusive method of determining subject matter jurisdiction in child custody cases was the UCCJA, which superseded any contrary decisional and statutory law. The court then pointedly observed: "There is no provision in the act for [subject matter] jurisdiction to be established by reason of the presence of the parties or by stipulation or consent."
Owens, 481 So.2d at 245 (citations omitted) (emphasis added). Therefore, despite James's appearance in the Connecticut court, because Karen wrongfully retained Katie after summer visitation, the six-month residency period never began, and Connecticut could not obtain subject matter jurisdiction under the UCCJA. The Lafayette County Chancery Court rightfully retained jurisdiction over this matter and is affirmed in its decision.
¶ 19. We think it also important to address Karen's appearance in the Mississippi court, as she responded to James's April 1999 complaint to modify the former 1994 decree. Though such generally constitutes an appearance for jurisdictional reasons, we note that Karen first made a special appearance on May 14, 1999, when she filed a motion to dismiss pursuant to Rule 12. The Lafayette County chancellor overruled this motion, however, so Karen filed an answer in July 1999 to James's motion, arguing the Lafayette County court must extend full faith and credit to the prior judgment in Connecticut. Karen continued to object to jurisdiction within her answer. We look to Rule 12 and various cases to fully explore this issue.
¶ 20. As we know from Rule 12, the pleader may raise the defense of lack of jurisdiction over the person by separate motion. Otherwise it should be asserted in the responsive pleading. According to Rule 12(h)(1) and its comments, a defense of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process is waived if not plead when making a pre-answer motion, or neither made by motion nor included in a responsive pleading or an amendment permitted by Rule 15(a).
¶ 21. In Hamm v. Hall, 693 So.2d 906 (Miss.1997), the non-resident father asserted lack of jurisdiction in a divorce granted by default some ten years earlier. The Mississippi Supreme Court stated:

*1085 The Mississippi Rules of Civil Procedure provide for limited circumstances in which a defense of lack of personal jurisdiction may be waived. MRCP 12(h) provides that a defense of lack of personal jurisdiction may be waived, but said provision only infers such a waiver through the filing of a motion in which the defense of personal jurisdiction is not raised.
Hamm, 693 So.2d at 910. The court held that the trial court did not have personal jurisdiction even though Hamm paid child support for ten years and did not raise the objection until Mrs. Hall filed for a modification and contempt.
¶ 22. Previously, in O'Neill v. O'Neill, 515 So.2d 1208 (Miss.1987), the Mississippi Supreme Court quoted Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871 (3 Cal., 1944), which stated:
It necessarily follows that Rule 12 has abolished ... the age old distinction between general and special appearances. A defendant need no longer appear to attack the court's jurisdiction over him.... He may now enter openly in full confidence that he will not thereby be giving up any keys to the courthouse which he possessed before he came in. This, of course is not to say that such keys must not be used properly. If the defense of lack of jurisdiction of the person is not raised by motion before answer or in the answer itself it is by the express term of paragraph (h) of Civil Procedure Rule 12 to be treated as waived, not because of the defendant's voluntary appearance but because of his failure to assert the defense within the time prescribed by the rules.
O'Neill, 515 So.2d at 1211-12 (emphasis added).
¶ 23. In Alpaugh v. Moore, 568 So.2d 291 (Miss.1990), the Moores argued that responsive pleadings filed by the Alpaughs, Louisiana residents, subjected them to jurisdiction of the court. The Alpaughs filed a motion to dismiss objecting to jurisdiction on March 2, 1984. On March 7, 1984, the Alpaughs answered the complaint, filed a counter-claim and again objected to jurisdiction due to invalid service of process. The motion to dismiss was denied and the Moores were granted the relief requested after a trial on the merits. Upon appeal by the Alpaughs, the Mississippi Supreme Court rejected the Moores' contention, stating "the Alpaughs have continually objected to the jurisdiction of the court and as such have made no general appearance that would subject them to the proceedings of the court." Alpaugh, 568 So.2d at 294.
¶ 24. From these rules and cases, it is apparent that whether a person may attack jurisdiction on appeal depends entirely upon when the objection is raised. If it was raised before or simultaneously with an answer or other responsive pleading, the objection is not waived by filing other pleadings, or even by participating in a trial on the merits. If, however, the objection is not raised until after an answer or other pleadings are filed (other than motions for continuance not considered to be a general appearance), the objection is waived per Rule 12(h). In the present case, Karen did file a motion to dismiss for jurisdictional grounds, timely asserting her jurisdictional objections, and continued to object, thus, preserving her jurisdictional objection for appeal.
¶ 25. In its order dated June 10, 1999, the Lafayette County Chancery Court found that service upon Karen was adequate by her receiving notice by Certified Mail, return receipt requested. This comports with Rule 4(c)(5), service by certified mail on person outside state, and Rule 4(f) which states "If service is made under paragraph (c)(5) of this rule, the return shall be made by the sender's filing with the court the return receipt or the returned envelope marked "Refused"." M.R.C.P. 4(f). Therefore, the chancellor did not err in denying Karen's motion to dismiss.

*1086 2. LAFAYETTE COUNTY IS AN INCONVENIENT FORUM WHERE NONE OF THE PARTIES INVOLVED LIVE WITHIN FIVE HOURS OF THE FORUM.
¶ 26. Karen also argues that Connecticut is a more convenient forum, primarily since neither the children nor the parents continue to live in Lafayette County where the original divorce was granted, the father living in Ocean Springs, Mississippi, and the mother living in Connecticut. As stated above, Connecticut could not obtain jurisdiction under the UCCJA at that time. Therefore, this question need not be addressed.

3. THE CHANCERY COURT MANIFESTLY ERRED BY REFUSING TO RECOGNIZE AN AGREED ORDER OF THE SUPERIOR COURT OF CONNECTICUT, THEREFORE VIOLATING THE FULL FAITH AND CREDIT CLAUSE.
¶ 27. Having stated the relevant law, the third point of this issue, Mississippi's failure to give full faith and credit to the Connecticut judgment, is answered in that Connecticut could not obtain subject matter jurisdiction under the UCCJA. Therefore, the Lafayette County Chancery Court was not required to give full faith and credit to that court's order.
B. EVEN IF CHANCERY COURT HAD JURISDICTION, THE COURT MANIFESTLY ERRED IN ITS MODIFICATION DECREE.
1. THE FATHER HAD UNCLEAN HANDS AT THE TIME OF HIS PETITION, THEREFORE THE CHANCERY COURT ERRED IN GRANTING THE FATHER RELIEF.
¶ 28. Karen argues that James should not have been granted relief under the Clean Hands Doctrine because he withheld summer visitation with Molly from Karen in 1999. She claims that her behavior did not rise to the level of James's when she retained Katie in Connecticut despite an injunction ordering her to return Katie at the end of summer visitation in 1998. Karen argues that James agreed for Katie to stay in Connecticut despite the fact that James obtained the injunction and filed a motion for contempt, which was never dismissed, upon Karen's refusal to abide by the order. From the chancellor's comments, as he began to make his ruling, he apparently considered both parties to have behaved badly. We do not find the chancellor manifestly wrong in failing to impose penalties against both parties in this case.

2. THE CHANCERY COURT MANIFESTLY ERRED BY REDUCING VISITATION OF THE PARTIES AND DENYING KAREN PRIMARY PHYSICAL CUSTODY OF MOLLY WITHOUT ANY SUBSTANTIAL FINDING OF FACT.
¶ 29. We find the assignment of error concerning visitation without merit. Karen presents the argument that neither party requested a reduction of visitation. James, in his complaint, and Karen, in her counterclaim, each requested a change in custody of a child subject to reasonable visitation rights, thus custody and visitation of both children were at issue. However, the ruling of the Lafayette County Chancery Court spelled out only summer visitation and Christmas holidays, leaving any other visitation to the agreement of the parties. Karen views this as a reduction in visitation, rather than an opportunity for additional visitation. In a case where both parties have previously violated court-ordered custody or visitation, the chancellor stated in his comments from the bench that the court would enforce the summer and Christmas visitation, and leave room for "these two [well-educated] parents [to] think about these two girls and ... try to work visitation out with these girls."
¶ 30. Karen argues that she was denied custody of Molly without any substantial finding of fact. As previously stated, *1087 the standard for modification of child custody is found in Ash v. Ash, 622 So.2d 1264 (Miss.1993). "[T]he moving party must prove by a preponderance of the evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child." Id. at 1265. When grilled by her own attorney who asked her to delineate any adverse circumstances necessitating a change in custody, Karen's only offering was that Molly does not get to be with her sister, a circumstance of Karen's own making. If an adverse change has been shown, the moving party must also show that the best interest of the child requires the change of custody. Id. at 1266. The record is void of any testimony why it would be in Molly's best interest to uproot her from her home and school. We cannot say the chancellor committed manifest error in denying Karen custody of Molly.

C. ENJOINING THE PARTIES FROM BRINGING SUIT IN ANY CONNECTICUT COURT EFFECTIVELY DENIES THE PARTIES' ACCESS TO THE COURTS AND VIOLATES THEIR RIGHT TO DUE PROCESS.
¶ 31. Having determined that Connecticut could not at the time obtain subject matter jurisdiction over this case, the Lafayette County Chancery Court's order declaring the stipulation entered in the Superior Court of the Judicial District of Tolland at Rockville, Connecticut to be null and void as to the issues addressed therein is affirmed. The chancellor's language stating "any proceedings hereafter initiated in the State of Connecticut, or any other state, by either of the parties, shall be a violation of this decree" is over broad as jurisdiction is determined at the time an issue arises. See Miss.Code Ann. § 93-23-5(1) (Rev. 1994). We find this to be error but irrelevant as it does not affect any substantive order herein.

D. THE LOWER COURT ERRED IN ASSESSING KAREN CHILD SUPPORT FOR MOLLY, AS KAREN HAD ALREADY BEEN ASSESSED CHILD SUPPORT FOR MOLLY BY THE CONNECTICUT COURT
¶ 32. Karen did not initially raise the issue of child support in her appeal. However, James argued this issue in his brief, and Karen added this assignment of error in her reply brief. In reviewing the record, it appears the chancellor instructed counsel that he was not interested in how Connecticut determined the amount of child support ordered. During cross examination of James, the following exchange occurred:
Q Do you recall originally that your portion was figured at $405 per week per child for both children?
MR. CRAIG: I object to that, may it please the Court. He said both children.... Because Molly was not in the jurisdiction of the Court up there at the time, and that Court could not in any way
THE COURT: All right, sir. I agree with you. Now, let me ask you this. Why are we ... talking about his income at that time and his income now? What's the relevance?
MR. LEWIS: What I'm trying to do, your Honor, is to show ... that Karen McDaniel was assessed with a child support obligation for Molly and that
THE COURT: I could care less about what Connecticut did. I'm not bound by Connecticut ...
MR. LEWIS: We understand that. I'm just saying in determining his child support obligation up there ... [h]e was given a credit.
. . .
THE COURT: Well, what's the relevance in it?
MR. LEWIS: Well, the relevance is that he was given a credit. Hefiled a motion in April to have child support assessed against Karen McDaniel. Two months previous he had been *1088 given a credit against what he would otherwise owed for Katy[Katie], $107.57 a week because he had Molly.
THE COURT: Well, I really ... don't care what happened in Connecticut.
Upon cross examination of Karen, the subject of how the Connecticut court figured child support was again dismissed by the chancellor:
Q And, now, are you telling this Court now that you are not in a position to pay financial support for you daughter, Molly?
A I do pay financial support, the Connecticut Court assessed me $157.00 for Molly.
Q No, ma'am. That's what we are in a disagreement about. Was Molly in Connecticut at the time this court hearing was held?
A No, sir.
Q Was Molly before the Court?
A She was dealt with by the Court.
Q But was she before the Court?
THE COURT: Mr. Craig, that's immaterial as far as I'm concerned. That decree is void as far as I'm concerned. Move forward.
Karen claims the amount assessed against James by the Connecticut court included a reduction for Molly. The chancellor halted testimony as to how the amount was figured, yet adopted that amount to be paid by James as child support for Katie, stating "This Court is going to order Dr. Mitchell to pay the sum that he has agreed to pay. He said he had agreed to pay the sum of $1143 a month." The chancellor then assessed $450 to be paid by Karen as support for Molly. We now reverse and remand for a more thorough consideration of the amount of child support awarded to both parties.

CONCLUSION
¶ 33. Jurisdiction in Connecticut was improper over Katie as she was not a resident of that state under the UCCJA. James's appearance in Connecticut could not transfer subject matter jurisdiction under the UCCJA. Thus, the Lafayette County Chancery Court did not err by refusing to recognize the judgment of the Connecticut court. We affirm the Lafayette County Chancery Court's decision as to jurisdiction. We do not find that the Lafayette County Chancery Court committed manifest error in failing to penalize the parties for unclean hands, nor in its determination of visitation and custody. We affirm the lower court's decision as to those issues. We find that the prohibition against the parties' filing suit in any other court in the future is over broad and reverse and render as to that point. We reverse the lower court's decision on child support and remand for reconsideration of the child support awards to both parties.
¶ 34. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART. COSTS OF THIS APPEAL ARE ASSESSED TWO-THIRDS TO THE APPELLANT AND ONE-THIRD TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MYERS, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., AND MOORE, J., NOT PARTICIPATING.