GRIFFIS, J.,
for the Court.
¶ 1. Randy T. Story filed a petition to modify custody and to hold Cindy F. Allen in contempt because she repeatedly interfered with his court-ordered visitation with his daughter, Francesca Haze Allen. The chancellor granted Randy’s petition for contempt, but he denied Randy’s petition to modify custody. On appeal, Randy argues that the chancellor committed manifest error in finding that it was in Francesca’s best interest to remain in Cindy’s custody. We reverse and remand for sufficient findings consistent with this opinion.
FACTS
¶ 2. In an order dated January 12, 2000, both Randy and Cindy agreed that Randy is Francesca’s father. The order provided that Cindy was to have physical custody of Francesca, and Randy was to have standard visitation.
¶3. Since the date that the order was entered, Cindy has repeatedly interfered with Randy’s visitation. On March 23, 2000, the chancery court found Cindy to be in contempt of the agreed order because she and Francesca moved, and Cindy told Randy that she and Francesca were moving to an address that Randy later determined was false. The chancellor ordered Cindy to pay Randy’s attorney’s fees and expenses. Again, in December 2001, Cindy was held in contempt for not adding Randy’s name to Francesca’s birth certificate.
¶ 4. In 2002, Cindy filed a complaint with the Hinds County Youth Court accusing Randy of sexually abusing Francesca. The Hinds County Youth Court case was closed in October 2003, and no government agency brought criminal proceedings against Randy for sexual abuse. From the institution of the youth court proceedings until 2004, Randy had only supervised contact with Francesca during his visitation.
¶ 5. In the summer of 2006, Cindy again interfered with Randy’s visitation. She told Randy that Francesca needed to attend summer school because her grades were bad. The school’s records revealed that Francesca had adequate grades, and she was scheduled to proceed to the next grade.
¶ 6. Cindy also interfered with Randy’s telephonic visitation. During the trial, Randy stated that Cindy would not answer the phone when he called Francesca during the hours authorized by the court. Randy produced his phone records, which support this contention.
¶ 7. On December 9, 2005, Randy informed Cindy that he wanted to exercise his Christmas visitation and that he would pick up Francesca in Casper, Wyoming where Cindy and Francesca lived. After Randy traveled to Wyoming, he learned that Francesca was at Cindy’s brother’s house in Mississippi. Randy testified that he had planned to take Francesca to his parent’s house. Instead, Randy spent that Christmas alone.
¶ 8. After the conclusion of the trial, the chancellor found Cindy to be in contempt. The chancellor ordered that “(A) [Cindy] shall strictly comply with all orders of this Court including this Order and shall foster a good father/daughter relationship with [Randy] and Francesca. (B) [Randy] is awarded a judgment against [Cindy] for $31,285.24 for attomeyfs] fees and expenses.”
¶ 9. Also, in the order, the chancellor determined that there had been a material *297 change in circumstances that adversely affected Francesca. The chancellor then conducted an Albright analysis. The chancellor ended his Albright analysis by stating, “[d]espite [Cindy’s] conduct, the Court, with serious reservation, believes that Francesca’s best interest is served by [Cindy] having ... physical custody. The Court assures [Randy] that her further interference with [Randy’s] relationship with his daughter will have serious consequences.” (Emphasis added). It is from this order that Randy now appeals.
STANDARD OF REVIEW
¶ 10. “In domestic relations cases, [the appellate court’s] scope of review is limited by the substantial evidence/manifest error rule.” Samples v. Davis, 904 So.2d 1061, 1063-64(¶ 9) (Miss.2004) (citing Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002)). “[We] will not disturb the chancellor’s opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Id at 1064(¶ 9) (quoting Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996)).
ANALYSIS
¶ 11. In Mabus v. Mabus, 847 So.2d 815, 818(¶ 8) (Miss.2003) (citations omitted), the supreme court stated the legal standard for a child custody modification proceeding is as follows:
[The] burden of proof is on the movant to show by a preponderance of the evidence that a material change in circumstances has occurred in the custodial home.
In the ordinary modification proceeding, the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child’s welfare; and (3) that the child’s best interests mandate a change of custody.
¶ 12. The chancellor determined that Cindy’s intentional interference with Francesca’s relationship with Randy constituted a material change in circumstances which adversely affected Francesca. The chancellor, however, determined that it was in Francesca’s best interest for Cindy to retain physical custody. Randy argues that this determination constitutes manifest error.
¶ 13. The supreme court has enumerated several factors to help chancellors determine what is in the “best interest” of the child in a custody dispute. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). These factors include:
[age,] health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Id. at 1005. The Albright factors are not to be treated as “the equivalent of a mathematical formula.” Lee v. Lee, 798 So.2d 1284, 1288(¶ 15) (Miss.2001).
¶ 14. During his Albright analysis, the chancellor concluded that the following factors favored Cindy: the continuity of care; the emotional ties of parent and child; and *298 the home, school, and community record of the child. The chancellor then concluded that the following factors favored Randy: the stability and responsibilities of employment, moral fitness of the parent, and the stability of the home environment. The chancellor found all other factors to be neutral and allowed Cindy to retain custody.
¶ 15. While addressing a case similar to this one, our supreme court stated that:
a non-custodial parent’s right to visitation is a “right more precious than any property right.” One parent ... cannot be permitted to unilaterally deny the other’s right to visit with his child. At the same time, “a change in custody will not be made for the purpose of rewarding one parent or punishing the other.”
Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993) (internal citations omitted). In Ash, the supreme court affirmed a chancellor’s determination to modify custody from the mother to the father because the mother continuously interfered with the father’s visitation. Id. at 1267.
¶ 16. In Jernigan v. Jernigan, 830 So.2d 651, 654(¶ 6) (Miss.Ct.App.2002), this Court affirmed a chancellor’s modification of child custody from the mother to the father because the mother had repeatedly interfered with the father’s relationship with his child. The Court found that the mother had “moved several times ... promoted the idea that [the father] had sexually abused the child when no medical evidence existed to support such allegation, ... and [the mother] failed to cooperate with the visitation order of the court.” Id. at 653(¶ 5).
¶ 17. In Mord v. Peters, 571 So.2d 981, 983 (Miss.1990), the Mississippi Supreme Court, when discussing the importance of visitation, stated, “[s]o important is the child’s right and a non-custodial parent’s right to develop this relationship, some courts have permitted a change of custody where it is determined that the custodial parent has interfered with a non-custodial parent’s visitation rights.”
¶ 18. Cindy argues that cases, such as Jemigan and Ash, are distinguishable. Cindy claims that in Jemigan and Ash the appellate courts affirmed the chancellor’s determination. Thus, Cindy argues that this Court must affirm the chancellor’s determination because of the standard of review.
¶ 19. Indeed, this Court may only disturb a chancellor’s determination regarding a modification of custody if the chancellor is manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Jernigan, 830 So.2d at 652(¶ 2). This principle, however, does not mean that this Court may never disturb a chancellor’s decision regarding modification of custody. The supreme court has emphasized that “where the chancellor improperly considers and applies the Albright factors, an appellate court is obliged to find the chancellor in error.” Hollon v. Hollon, 784 So.2d 943, 946(¶ 11) (Miss.2001) (citing Jerome v. Stroud, 689 So.2d 755, 757 (Miss.1997)).
¶20. After reviewing the record, the Court finds that the chancellor committed manifest error during the Albright analysis. This conclusion is based upon the inconsistencies in the chancellor’s order regarding the Albright factors of continuity of care and emotional ties of the parent and child.
¶ 21. In his order, the chancellor stated the following regarding the continuity of care factor: “Francesca has been with her mother most of her life. Her separation from her father is due to [Cindy’s] conduct. However, this factor favors [Cindy].” It is neither logical nor proper to favor one of the parents, under an Al- *299 bright factor, because of that parent’s malfeasance. The chancellor admitted in his order that the continuity of care factor favored Cindy because Cindy repeatedly interfered with Randy’s relationship with Francesca. Equity dictates that the chancellor should have at least found this factor to be neutral. Therefore, we find that the chancellor committed manifest error with regard to the analysis of the continuity of care.
¶ 22. The chancellor also stated the following regarding the emotional ties of the parent and child. “Francesca is close emotionally to her parents and the parents to her. [Cindy] has failed Francesca by not cultivating Francesca’s relationship with her father. This factor slightly favors [Cindy].” Again, we find that the chancellor’s order is not logical or proper to reward Cindy’s interference with Randy’s relationship with Francesca. Again, equity dictates that the chancellor should have at least found this factor to be neutral. Therefore, we find that the chancellor committed manifest error with regard to the analysis of the emotional ties of the parent and child.
¶ 23. Several of the chancellor’s factual findings, which are supported by the record, appear to be facially inconsistent with the chancellor’s weighing of the Albright factors. In the absence of some cogent explanation for that facial inconsistency, it must be considered manifest error. In the absence of that cogent explanation, this manifest error appears to have led to the inequitable result of rewarding Cindy for her persistent interference with Francesca’s right to have a meaningful relationship with her father. Therefore, this Court is obligated to reverse the chancellor’s denial of Randy’s petition to modify custody and to remand this case to the chancellor to undertake either a new analysis of the Albright factors, which should include a cogent explanation of any facial inconsistency between the facts and the weight accorded to any individual factor, or a new evidentiary hearing to reconsider the Al-bright factors.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF OKTIBBEHA COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON; JJ., CONCUR.