# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00334-COA

TRAVIS STRAIT                                                                    APPELLANT

v.

KRISTY LORENZ                                                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/30/2012 |
| TRIAL JUDGE: | HON. KENNETH M. BURNS |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM PAUL STARKS II |
| ATTORNEY FOR APPELLEE: | MATTHEW DANIEL WILSON |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | MODIFIED CHILD CUSTODY AND FOUND FATHER IN CONTEMPT |
| DISPOSITION: | AFFIRMED: 01/06/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Travis Strait appeals the chancellor's judgment that modified custody, found him in contempt, and awarded attorneys' fees. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Travis and Kristy Lorenz were married in 2003. They had one child together, Jane,[1] born May 31, 2002.

¶3.     On December 19, 2005, Travis and Kristy were granted an irreconcilable differences divorce. According to their agreed divorce judgment, Travis and Kristy had joint legal

---

    [1] Because there are allegations of sexual abuse, a pseudonym is used for the minor child's name.

custody of Jane, Travis had primary physical custody of Jane, Kristy was entitled to certain visitation, and Kristy owed child support.

¶4. Less than two months after the divorce, on January 31, 2006, Kristy filed a petition for a modification of custody. On April 11, 2006, the chancellor entered an order that found Kristy failed to meet her burden of proof and denied the petition.

¶5. On August 8, 2006, Kristy filed her second petition for a modification of custody. She alleged that Travis had sexually abused Jane. The chancellor denied the modification. The judgment was appealed to the Mississippi Supreme Court, and it was affirmed. *See Lorenz v. Strait*, 987 So. 2d 427, 435 (¶47) (Miss. 2008).

¶6. On March 16, 2009, Kristy filed her third petition for modification of custody. To support this petition, Kristy alleged that Travis had denied her visitation. The chancellor found that "neither party [had] tried as they should" to ensure Kristy's visitation with Jane and denied the petition. However, the chancellor modified Kristy's visitation schedule because Travis had moved to Hawaii, and due to the fact that Hawaii has an eleven-month school schedule.

¶7. On June 15, 2010, Kristy filed her fourth petition to modify custody and included a claim that alleged Travis was in contempt. In response, Travis filed a counterclaim for an increase in child support and alleged that Kristy was in contempt. The chancellor denied Kristy's motion, entered a judgment against Kristy for past-due child support, and modified the visitation schedule.

¶8. On April 21, 2011, Travis filed a petition in Hawaii for a protection order. Travis alleged that Kristy's husband, Aaron Lorenz, had molested Jane. A temporary restraining

2

order (TRO) was entered against Kristy; the TRO was later removed due to "insufficient evidence."

¶9.    On May 26, 2011, Kristy filed a fifth petition to modify custody. In this petition, Kristy alleged that Travis "continued to thwart" her visitation rights with Jane and that he had sexually abused Jane. This is the petition that began the proceedings that we consider in this appeal.

¶10.   By May of 2011, Travis had moved to California. On June 16, 2011, he filed a legal action in California for a temporary restraining order against Kristy.

¶11.   On July 11, 2011, Travis responded to Kristy's petition by filing a motion to dismiss for lack of jurisdiction and forum non conveniens. Travis also moved to appoint a guardian ad litem (GAL). The chancellor denied Travis's motion to dismiss, and declined to dismiss on grounds of forum non conveniens.

¶12.   In addition, the chancellor entered an agreed order that appointed Lee Ann Turner as a GAL, to investigate the allegations of sexual abuse. The chancellor ordered the GAL to make findings and recommendations regarding custody. The chancellor also ordered Travis to bring Jane to Mississippi in April 2012, so that she could be interviewed by the GAL and attend "therapeutic counseling" sessions with Dr. Criss Lott.

¶13.   A hearing on the merits was held on July 26 through 27, 2012. The final day of the hearing was scheduled for September 20, 2012 (due to the availability of Travis's counsel).

¶14.   On August 20, 2012, before the hearing resumed, Kristy filed an emergency motion for immediate temporary custody. Kristy sought to enroll Jane in the Lowndes County school system for the 2012-13 school year. Travis objected, and he filed a motion to remove

3

the GAL. However, due to the approaching school year and the likelihood of modification of custody (based on the GAL's recommendation in her preliminary report), the chancellor found custody should be temporarily transferred to Kristy.

¶15. On September 20, 2012, the trial resumed. The GAL presented her findings. Then, on October 22, 2012, Travis filed a motion that alleged the GAL was biased and argued that the GAL's bill for $12,586.81 was excessive.

¶16. On November 1, 2012, the chancellor entered a final judgment. The chancellor granted Kristy custody of Jane, ordered Travis to pay child support and Jane's health insurance, and denied Travis's objections to the GAL's report and fees. As a result, Travis was ordered to pay $8,391.21 – two-thirds of the GAL's fees, based on the agreed order.

¶17. On November 7, 2012, Kristy filed a motion to alter or amend the judgment. Kristy asked the chancellor to address the issues of contempt and attorney's fees, which were not addressed in the November 1 opinion. Travis also filed a motion for a new trial.

¶18. On December 21, 2012, the chancellor entered an order that denied Travis's motion for a new trial and granted Kristy's motion to alter or amend. The chancellor found Travis was in contempt and ordered Travis to pay $10,000 in attorney's fees and an additional $1,000 toward the GAL's fees. Travis has now appealed the chancellor's decisions.

## STANDARD OF REVIEW

¶19. "Findings of fact made by a chancellor may not be set aside or disturbed upon appeal if they are supported by substantial, credible evidence." *A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1013 (¶23) (Miss. 2012) (quoting *Johnson v. Gray*, 859 So. 2d 1006, 1012 (¶32) (Miss. 2003)). Matters involving child custody are within the sound discretion of the chancellor.

4

*Sturgis v. Sturgis*, 792 So. 2d 1020, 1023 (¶12) (Miss. Ct. App. 2001) (citation omitted). This Court will not disturb a chancellor's findings unless the chancellor abused his discretion, was manifestly wrong, or clearly erroneous, or applied an erroneous legal standard. *Sanderson v. Sanderson*, 824 So. 2d 623, 625 (¶8) (Miss. 2002). Legal questions are reviewed de novo. *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 721 (¶5) (Miss. 2002).

## ANALYSIS

### I. Whether it was error to modify custody.

¶20. To modify child custody, "the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interest mandates a change of custody." *A.M.L.*, 98 So. 3d at 1013 (¶24) (quoting *Mabus v. Mabus*, 847 So. 2d 815, 818 (¶8) (Miss. 2003)). The chancellor must consider the "totality of the circumstances." *Id.* (quoting *Ash v. Ash*, 622 So. 2d 1264, 1266 (Miss. 1993)). If an adverse substantial or material change is found, the chancellor must then perform an *Albright* analysis to determine whether modification of custody is in the child's best interest. *White v. White*, 26 So. 3d 342, 351 (¶28) (Miss. 2010) (citing *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983)).

### 1. Material Change in Circumstances

¶21. Here, the chancellor found that Travis's interference with Kristy's visitation rights was a material change in circumstances. We note that "[v]isitation issues should not normally be considered by the lower court when hearing a plea for custody modification[.]"

5

*Ellis v. Ellis*, 952 So. 2d 982, 994 (¶27) (Miss. Ct. App. 2006). Contempt orders should generally be enforced "through incarceration rather than resorting to a change of custody[.]" *Id.* (quoting *Ash*, 622 So. 2d at 1266). However, "the supreme court has identified that interference with visitation may constitute a material change in circumstances given sufficient severity." *Id.* Such a finding should be reserved for extraordinary circumstances. *Id.*

¶22. The issue with visitation first surfaced in March 2009, when Kristy filed a petition to modify child custody. At that point, Kristy had not seen Jane since Travis moved to Hawaii a year earlier in 2008. By the time of the hearing on the motion in July 2009, Kristy had not seen Jane in over fifteen months. The chancellor's order, dated August 24, 2009, found this "alarming." The chancellor also expressed concern over Travis's "disinterest in [Jane] seeing her mother." Nevertheless, the chancellor went on to find "neither party [had] tried as they should to see that [Jane] saw her mother." The chancellor held that the facts "approache[d]" a finding of a material change in circumstances, but did not "rise[] to that level." The chancellor implored the parties "to strictly follow the visitation schedule" set out in the order.

¶23. From July 2009 to October 2010, there was no visitation. This led Kristy to file another petition for change of custody and for contempt. In October 2010, the chancellor denied the contempt petition, but entered a judgment that modified the visitation schedule.

¶24. Kristy exercised visitation with Jane over Christmas break in 2010. Then, Kristy attempted to contact Travis in April 2011, first by certified mail and then by email, about her 2011 summer visitation and Jane's flight schedule. Travis did not respond. Instead, Travis filed a petition for a restraining order in Hawaii. Travis alleged that sexual abuse had

6

occurred over Christmas in 2010. Travis explained that he was unaware of the abuse until April 19, 2011, and he contacted the Mississippi Department of Human Services (DHS) on April 20, 2011.[2] In response, Kristy filed her fifth petition to modify custody in May 2011.

¶25. From April 2011 until April 2012, Travis prevented all communication between Kristy and Jane. Travis concedes this fact. He argues, however, that he had a "good-faith" reason for denying visitation, i.e., the allegations of sexual abuse during the prior visitation. These allegations were later determined to be unfounded, and the TRO obtained in April 2011 in Hawaii was dissolved. Despite this, Travis filed for another TRO in June 2011, days after he moved to California. The California TRO was also dissolved for lack of evidence. Criminal charges filed in Lowndes County, Mississippi, were also dismissed for lack of evidence. Indeed, the chancellor found that not only were Travis's abuse allegations unsubstantiated, but Travis "seemingly coached [Jane] to make allegations" of abuse. The chancellor also noted that while the abuse allegations were against Kristy's husband, not Kristy, "the desired effect and impact were the same as if they had been brought against [Kristy], and the restraining order was brought against both her and Mr. Lorenz." Also of significance, Travis never alerted the chancellor in Mississippi that he desired to restrict visitation due to his fear for Jane's safety. Rather, he filed for TROs in Hawaii and California. Meanwhile, he continued to file responses and motions in the action in Mississippi, without mention of his "good-faith" reason for denying visitation.

---

[2] Travis had testified earlier that he learned of the alleged abuse in February 2011 and attempted to contact either DHS or Child Protective Services then. However, he later admitted this was false.

7

¶26.    The Mississippi Supreme Court has held:

> [A] decision to change custody, perhaps more so than an original custody determination, must not be made hastily or without ample justification. . . . [C]hildren do not need to be bounced back and forth between their parents like a volleyball.  On the other hand, we have taken the view that a non-custodial parent's right to visitation is a right more precious than any property right. One parent, in an effort to continue doing battle following the finality of a divorce, cannot be permitted to unilaterally deny the other's right to visit with his child.  At the same time, a change in custody will not be made for the purpose of rewarding one parent or punishing the other.  Above all, in modification cases, as in original awards of custody, we never depart from our polestar consideration: the best interest and welfare of the child.

*Ash*, 622 So. 2d at 1266 (internal citations and quotation marks omitted).

¶27.    In *Ash*, the chancellor issued various visitation-related restraining orders, emergency orders, and modification orders over the course of five years. *Id.* at 1265.  The non-custodial parent then filed another motion to change custody and find the custodial parent in contempt. *Id.*  The chancellor granted the motion, finding a material change in circumstances had occurred. *Id.*  In affirming the chancellor's ruling, the supreme court found that the visitation dispute was tackled by "two prior chancellors and six attorneys, [and] more than ten court proceedings," none of which resolved the issue. *Id.* at 1266.

¶28.    The facts in this action are comparable to *Ash*.  As in *Ash*, the chancellor here contemplated liberal visitation, which was deliberately denied. *See id.*  Also, there was an "onslaught of pleadings . . . stemming from visitation problems," none of which were resolved by the chancellor's orders. *Id.* at 1265.

¶29.    Travis admittedly ignored Kristy's attempts to contact him and would not allow Jane to take Kristy's phone calls.  The chancellor encouraged communication between Kristy and Jane through email and mail, but Travis disabled Jane's email account that Kristy had created

8

for her and there was testimony that Jane did not receive cards mailed to her. We cannot find the chancellor erred in finding the repeated failure to comply with visitation order was a material change in circumstances, for which contempt orders would not resolve.

¶30. Travis argues that the lack of visitation was not a "change in circumstances," but rather a foreseeable, continued animosity between the parties that existed from the time of divorce. We cannot find that the chancellor anticipated, at the time of the divorce decree, that Travis would continuously refuse to comply with the visitation orders. Also, we note that no a single act of denying visitation amounted to a material change in circumstances. Rather, as in *Ellis*, it was the "*continued violation* of court orders pertaining to visitation and continued hindering of the visitation time" that amounted to a material change in circumstances. *Ellis*, 952 So. 2d at 990 (¶17) (emphasis in original). Given the severity of the denial of visitation, we cannot find the chancellor abused his discretion in finding the denial of visitation was a material change in circumstances.

## 2. Adverse Effect of Material Change

¶31. Next, Travis claims that Jane did not suffer any adverse effects from the material change of circumstances. To establish adverse effect, the parties discuss the testimony of the GAL and Dr. Lott.

¶32. Dr. Lott testified that Travis had alienated Jane from Kristy by restricting her visitation. He found no evidence of abuse, and Jane specifically told him that no abuse had occurred. Dr. Lott found Jane was close to both parents and was a bright, sensitive, and well-adjusted child, traits inconsistent with a sexually abused child.

¶33. However, Dr. Lott also found that Jane had demonstrated "real confusion" because

9

of the conflict between her parents and her alienation from Kristy. Jane told Dr. Lott several times that her dad and stepmother had "lied" and told her that her "mother gave [her] up or signed [her] over to [her] dad." She also told him "she had not received items or things from [Kristy] and had not been able to talk" to her. Jane stated she did not know why and was confused. When asked about abuse, Jane stated that she wished she had a "rewind button" in regard to several statements she had made about Kristy's husband and Travis. She initially told Dr. Lott that Travis had "told her to say some things," but then retracted this statement.

¶34. Dr. Lott found that Jane was saying what she thought her parents wanted to hear. He concluded that Jane's restricted access to Kristy was a "significant concern," and that "the recommendation has been in the past that we reverse custody" under the circumstances. Dr. Lott found that a modification of custody would "significantly improve" Jane's condition, and if her confusion was not addressed, she would develop "significant emotional problems in the next five to ten years."

¶35. Likewise, the GAL found that Jane's emotional health was adversely affected by the Travis's refusal to foster a relationship between Jane and Kristy. Travis consistently refused to comply with the court's visitation schedule and discouraged Jane from wanting to live with Kristy. Jane told the GAL that Travis had restricted her phone and email access to prevent communication with Kristy. The GAL recommended that primary custody be transferred to Kristy.

¶36. Based on this evidence, the chancellor found that "[Jane] has manifested anxiety, sorrow[,] and confusion at not seeing her mother. Jane has shown to be extremely conflicted between wanting to benefit from the love of both her parents, but believes the two to be

10

mutually exclusive." The chancellor described the environment in Travis's custody as "poisonous." The chancellor's finding was consistent with that of Dr. Lott and the GAL and was supported by the evidence. Thus, we cannot find the chancellor abused his discretion in finding Travis's interference with visitation adversely affected Jane.

### 3. Best Interest of Child

¶37. The best interest of the child is determined by the following factors set out in *Albright*:

> (1) age, health and sex of the child; (2) determination of the parent that had the continuity of care prior to the previous modification; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship.

*Ellis*, 952 So. 2d at 994 (¶28) (citing *Albright*, 437 So. 2d at 1005). The chancellor conducted an *Albright* analysis and found five factors to be neutral and five favored Kristy. He did not consider any other factors relevant for his analysis. Travis argues the chancellor erred in finding no factors in his favor.

### a. Age, Health, and Sex of the Child

¶38. Jane was a ten-year-old girl in good physical health at the time of the hearing. But the chancellor found that "she has clearly suffered emotionally in [Travis's] custody," and "is at a point where the care of her own mother would be especially beneficial." Thus, the chancellor found this factor favored Kristy. Travis argues the chancellor's per se finding in favor of Kristy based on Jane's age and sex was in error, and this factor should have been

11

found neutral. We disagree that the chancellor solely based his finding on Jane's age and sex, but rather considered the child's emotional health. Jane told the GAL that she missed her mother and experienced stomach pains as a result of not being allowed to see her. As the testimony showed that Travis denied Kristy visitation and that this adversely affected Jane emotionally, we cannot find the chancellor abused his discretion in finding this factor favored Kristy.

### b. Continuity of Care Prior to the Previous Modification

¶39. Although Travis maintained continuity of care, this factor was found neutral because of Travis's "interference with visitation and communication." Travis argues it was error for the chancellor to overlook the fact that he had taken continuous care of Jane for nearly nine years. And he argues that although he admittedly denied visitation at points, the facts showed Kristy was not diligent in attempting to exercise her visitation rights.

¶40. A similar situation arose in *Story v. Allen*, 7 So. 3d 295, 298 (¶21) (Miss. Ct. App. 2008). In *Story*, the custodial parent had been with the child most of the child's life. *Id.* However, the chancellor found the continuity-of-care factor favored the noncustodial parent because the custodial parent had caused a separation between the child and noncustodial parent. *Id.* This Court affirmed, finding "[i]It is neither logical nor proper to favor one of the parents, under an *Albright* factor, because of that parent's malfeasance." *Id.* at 298-99 (¶21). The same principle applies here. As a matter of equity, the chancellor found this factor should not favor Travis, because Travis had prevented visitation and communication between Jane and Kristy. We cannot find the chancellor abused his discretion in so finding.

12

### c. Parenting Skills and Willingness and Capacity to Provide Primary Child Care

¶41. The chancellor found that "[Jane] has suffered" in Travis's custody, but "had done well" when she was able to spend time with Kristy. Thus, this factor weighed in Kristy's favor. Travis argues this factor should have, at the least, been neutral since he had provided the majority of care. However, because of Travis's repeated interference with Kristy's visitation rights, the chancellor questioned Travis's parenting skills. And the GAL noted that she was concerned about Jane's access to adequate amounts of food and bathing restrictions in Travis's custody. We cannot find the chancellor erred in finding this factor in Kristy's favor.

### d. Employment of the Parent and Responsibilities of Employment

¶42. This factor was found neutral and is not disputed by Travis.

### e. Physical and Mental Health and Age of the Parents

¶43. This factor was found neutral and is not disputed by Travis.

### f. Emotional Ties of the Parent and Child

¶44. The chancellor found both parents had strong emotional ties to Jane, but Jane's emotional connection to Kristy was "clouded by many beliefs she holds, which seems to have originated with her father, namely, that she may hurt her father if she cares for her mother, and that her mother gave her away." For this reason, the chancellor found this factor slightly favored Kristy. Travis argues that the chancellor also stated Jane had a "strong effect" for both parents, making this factor neutral. However, because of Travis's interference with

13

visitation, equity demands that this factor be found against Travis or, at the least, neutral. *See Story*, 7 So. 3d at 299 (¶22) (finding custodial parent's interference with visitation should not be rewarded by finding emotional-ties factor in the custodial parent's favor). Thus, we cannot find the chancellor erred in finding this factor slightly favored Kristy.

### g. Moral Fitness of the Parents

¶45. The chancellor noted his concerns about Travis's "behavior and manipulation" regarding visitation and found this factor slightly favored Kristy. Travis argues the chancellor failed to identify any behavior or manipulation, and ignored the fact that he attends church with his family while Kristy does not. The chancellor noted multiple instances of Travis's denial of visitation, and the chancellor was within his discretion in finding this factor in Kristy's favor.

### h. Home, School, and Community Record of the Child

¶46. In finding this factor neutral, the chancellor noted that Jane did "fairly well in school" and was well behaved, but did not participate in extra-curricular activities. Travis argues this finding fails to give him credit for raising a successful child. Because of Travis's interference with visitation, we cannot find the chancellor erred in finding this factor neutral.

### i. Preference of the Child

¶47. The child was not old enough to state a preference.

### j. Stability of Home Environment and Employment of Each Parent

¶48. The chancellor found each parent's home appeared stable. Kristy was a stay-at-home mom, and Travis was in the United States Navy. However, the chancellor was "concern[ed]

14

about the home environment of [Travis], given its impact on [Jane]"; thus, the chancellor found this factor slightly favored Kristy. Travis argues there was no evidence to support the chancellor's concern other than the GAL, who did not visit or investigate Travis's home. However, because the chancellor found Travis's interference with Kristy's visitation adversely affected Jane, we cannot find the chancellor erred in finding the stability of the home environment slightly favored Kristy.

**II.      Whether the chancellor erred in adopting the GAL's report.**

¶49.    Travis next argues the chancellor erred in accepting the GAL's report, without question, even when the findings conflicted with the evidence.

¶50.    The GAL was appointed by agreed order because of the sexual-abuse allegations. The GAL was ordered to report information to the chancellor regarding the abuse allegations and to make recommendations regarding the child's best interest. A GAL's findings and recommendations are not binding, but are meant to "provide additional information to aid the chancellor in making the decision on the merits[.]" *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (¶10) (Miss. 2002) (citation omitted). The chancellor, as fact-finder, must consider all the evidence and give it such weight as it deserves. *Id.*

¶51.    The chancellor stated the GAL's report "comported with the [c]ourt's own observations throughout the course of the case, and particularly at trial." It is clear the chancellor made his own findings and did not blindly adopt the GAL's report. The chancellor noted that Travis had no objection to the GAL's report until he realized it was not favorable to his case. Also, the GAL testified that Travis was uncooperative with her evaluation. The chancellor, as fact-finder, was within his discretion to give the weight to the

15

GAL's report that the chancellor found it deserved. We find no error in the chancellor's reliance on the GAL's report.

> **III.** **Whether the chancellor erred in finding Travis in contempt where he had a reasonable "good-faith belief" of abuse at the time of his denial of visitation to Kristy.**

¶52. Travis admits that he denied Kristy all visitation and contact with Jane from April 2011 through April 2012. However, he argues that he had a good reason, a "good-faith belief" that Kristy's husband was sexually abusing Jane, and thus he should not have been found in contempt. The chancellor found no merit to this argument.

¶53. The issue of contempt was not addressed in the chancellor's original order, but was ruled upon after Kristy's post-trial motion to alter or amend the judgment. The chancellor noted that Travis did not respond to this motion. Travis argues no response was needed because he had already denied the allegations of contempt in a previous response and had testified at trial, denying the allegations.

¶54. "Whether a party is in contempt is left to the chancellor's substantial discretion." *McIntosh v. Dep't of Human Servs.*, 886 So. 2d 721, 725 (¶11) (Miss. 2004). "Failure to comply with a court order is prima facie evidence of contempt." *Evans v. Evans*, 75 So. 3d 1083, 1087 (¶14) (Miss. Ct. App. 2011) (citing *McIntosh*, 886 So. 2d at 724 (¶11)). "To rebut a prima facie case of contempt, a defendant must show an 'inability to pay, that the default was not willful, that the provision violated was ambiguous, or that performance was impossible.'" *Id.* (quoting Deborah H. Bell, *Bell on Mississippi Family Law* § 11.05[1][a] (1st ed. 2005)).

¶55. The chancellor found:

With respect to instances in which Mr. Strait acted in contempt of Court, the Court found that: when Mrs. Lorenz contacted Mr. Strait about summer 2011 visitation, he did not respond to her, in contempt of this Court's October 19, 2010 Order; Mr. Strait consistently refused to comply with visitation, in Contempt of this Court's prior Orders and Judgments; and, Mr. Strait restricted [Jane]'s telephone and email contact with her mother, in contempt of this Court's August 24, 2009 Judgment. Furthermore, the parties were required by this Court's August 11, 2011 Order to cooperate fully with the guardian ad litem in her investigation, and as the Court found in its Opinion and Judgment, Mr. Strait consistently failed to do so. For these several instances of Mr. Strait's willful failure to comply with this Court's Orders, he is held to be in contempt of this Court.

¶56. Although Travis alleges he had a good-faith belief of abuse, this is not a defense to contempt in this matter. Travis filed for a protective order in Hawaii on April 21, 2011, which was set for hearing on June 1, 2011. After the hearing, the protective order was dissolved due to lack of evidence. On May 26, 2011, Kristy filed for contempt and moved to modify custody. A trial date was set for June 28, 2011. However, on June 16, 2011, Travis moved for a restraining order in California, where he had recently moved. No petition was made in Mississippi to suspend visitation. Travis makes no excuse for the other missed visitations or his failure to comply with the court's requirement that he keep his address updated with the chancery clerk. The "[f]ailure to comply with a court order is prima facie evidence of contempt." *Evans*, 75 So. 3d at 1087 (¶14) (citing *McIntosh*, 886 So. 2d at 725 (¶11)). As stated, contempt matters are "left to the chancellor's substantial discretion." *McIntosh*, 886 So. 2d at 725 (¶11). We find the chancellor did not abuse his discretion in finding Travis in contempt.

**IV.    Whether the chancellor erred in granting Kristy attorney's fees.**

¶57. Travis also argues that the chancellor erred in awarding Kristy attorney's fees without

17

an analysis under *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982), as to the nature of her attorney's services, the attorney's skill, the novelty of the issues, and the amount of time the attorney spent on each issue at trial.

¶58.    "In contempt actions, attorney['s] fees are awarded 'to make the plaintiff whole.'" *Mabus v. Mabus*, 910 So. 2d 486, 490 (¶13) (Miss. 2005) (quoting *Rogers v. Rogers*, 662 So. 2d 1111, 1116 (Miss. 1995)).    "The purpose of civil contempt is to enforce or coerce obedience to the orders of the court." *Lahmann v. Hallmon*, 722 So. 2d 614, 620 (¶19) (Miss. 1998). "Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." *Mabus*, 910 So. 2d at 491 (¶20) (quoting *Cumberland v. Cumberland*, 564 So. 2d 839, 845 (Miss. 1990)).

¶59.    The chancellor awarded Kristy $10,000 in attorney's fees and an additional $1,000 to partially reimburse her for her payment to the GAL.  The evidence showed Kristy spent $37,545 for the Mississippi attorney, $1,500 to hire an attorney in Hawaii, $3,289 to hire an attorney in California, and $3,600 for other costs.  She was ordered to pay one-third of the GAL's bill, or $4,195.60.

¶60.    Kristy argues because this was a contempt matter, no analysis under *McKee* was necessary.  Kristy, as did the chancellor, cites *Bounds v. Bounds*, 935 So. 2d 407, 412 (¶¶18-19) (Miss. Ct. App. 2006), for the proposition that no *McKee* analysis was necessary.  In *Bounds*, the appellant argued the chancellor erred in awarding attorney's fees without making a *McKee* analysis.  *Id.* at (¶17).  This Court found that the "argument fail[ed] to differentiate awarding attorney's fees in a divorce action as compared to a contempt action." *Id.* at (¶18)

18

(citing *Mabus*, 910 So. 2d at 486). At trial, testimony was presented that Kristy's attorney's fees exceeded $42,000. Travis does not argue that the attorney's fees were unreasonable, only that no itemization was provided. The chancellor awarded $10,000 in attorney's fees, which was a fraction of the attorney's fees presented. Because this was a contempt action, we find no error in the chancellor's award.

**V.      Whether the chancellor erred in authorizing the GAL's fees and assessing the majority of the fees to Travis.**

¶61.    Travis argues the GAL's fees were unreasonable and should be reduced. He also argues he should not have been ordered to pay two-thirds plus $1,000 of the GAL's fees.

¶62.    The GAL's total bill was $12,586.81. She logged 122 hours of work, and billed $100 an hour, for a total of $12,200. Each hour of work was itemized and detailed. The chancellor found the work well documented and reasonable, and the chancellor found the hourly rate was within, or even below, the range of customary fees. The GAL also charged $386.81 in expenses—$5.52 for postage and the rest mileage between Columbus and Kristy's home. Travis cites to laws in other states that cap what a GAL may charge; however, Mississippi has no such cap. Rather, the GAL's fees are left to the discretion of the chancellor. Mississippi Rule of Civil Procedure 17(d) states: "In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for his service rendered in such cause, to be taxed as a part of the cost in such action." The chancellor found the fees were reasonable and noted that Travis had no objection to the fees until he discovered the GAL's report was disfavorable to him. We cannot find the chancellor erred in finding the GAL's fees

19

reasonable.

¶63. Regarding the assessment of the majority of the GAL's fees to Travis, we note that this was not the chancellor's decision, but rather the arrangement agreed to by the parties. The agreed order appointing Turner as the GAL states: "the cost of the [GAL] shall be borne by the parties as follows—with two-thirds (2/3) of the costs borne by Travis Strait and one-third (1/3) by Kristy Lorenz[.]" As this was the agreement of the parties, we cannot find the chancellor erred in simply enforcing the percentages agreed to by the parties. "Our rules of procedure treat guardian ad litem fees as court costs to be awarded against the non-prevailing party." *Miss. Dep't of Human Servs. v. Murr*, 797 So. 2d 818, 821 (¶9) (Miss. 2000) (citing M.R.C.P. 17(d)). Thus, the chancellor would have been within his discretion to award all the GAL's fees to Travis. The chancellor did not err in ordering Travis to pay two-thirds of the GAL's fees or the additional $1,000 ordered in the amended judgment.

**VI.    Whether the chancellor erred in failing to transfer the case due to forum non conveniens.**

¶64. Travis argues that the chancery court should have declined jurisdiction and transferred the case to California, where he and Jane lived.

¶65. "A court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Miss. Code Ann. § 93-27-207(1) (Rev. 2013). Travis filed a motion to transfer the case due to forum non conveniens on July 11, 2011. The motion was denied on July 26, 2011. This decision was not challenged or appealed in the form of an interlocutory

appeal. *See 3M Co. v. Johnson*, 926 So. 2d 860, 861 (¶1) (Miss. 2006) (interlocutory appeal from an order denying dismissal for forum non conveniens). Rather, all litigation continued in Mississippi without objection. Thus, we find this issue was waived.

¶66. While not argued on appeal, we note that Travis's motion alleging forum non conveniens also challenged the chancery court's jurisdiction over matter, which is not subject to waiver. *See Harry v. Harry*, 856 So. 2d 748, 752 (¶15) (Miss. Ct. App. 2003) ("[S]ubject matter jurisdiction may not be waived and may be asserted at any stage of the proceeding or even collaterally."). Travis's motion for forum non conveniens is distinguishable from his motion for lack of jurisdiction. A motion for forum non conveniens in a child-custody matter does not challenge the court's jurisdiction, but rather argues that "[a] court of this state which has jurisdiction . . . may decline to exercise its jurisdiction" for convenience of the parties. Miss. Code Ann. § 93-27-207(1). The court that made the child-custody determination retains jurisdiction until:

> [A] court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships[.]

Miss. Code Ann. § 93-27-202 (Rev. 2013). No such determination regarding lack of jurisdiction was made in this case. Thus, we find the chancery court's jurisdiction was proper. The chancellor's decision is affirmed.

¶67. **THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND**

21

**FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., NOT PARTICIPATING.**