# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01738-COA

**ANGELA ELLIS DAVIS**                                                    **APPELLANT**

**v.**

**GARY SIDNEY DAVIS**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2014 |
| TRIAL JUDGE: | HON. WILLIAM R. BARNETT |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | AUDRY REGNAL BLACKLEDGE |
| ATTORNEY FOR APPELLEE: | W. TERRELL STUBBS |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | DENIED APPELLANT'S PETITION TO TERMINATE PARENTAL RIGHTS, MODIFY CUSTODY, AND INCREASE CHILD SUPPORT |
| DISPOSITION: | AFFIRMED - 01/24/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

## FACTS AND PROCEDURAL HISTORY

¶1.    Prior to their divorce in 2004, Gary Davis and Angela Davis had two children—Kristin Davis and Jade "Nicole" Davis.[1]   Gary and Angela's divorce decree incorporated a child-custody, support, and property-settlement agreement, which provided for "joint legal and joint physical custody" and visitation for the "noncustodial parent."

---

[1] Kristin was born in 1997, and Nicole was born in 2001.

Angela was the custodial parent, and Gary was the noncustodial parent with visitation. The agreement also provided that Gary would pay $500 per month in child support.

¶2. In October 2013, Angela filed a petition in the Covington County Chancery Court to terminate Gary's parental rights or, in the alternative, modify Gary's custody/visitation rights and increase the amount of child support. Angela alleged that Gary had not exercised visitation with Kristin after an altercation with Gary's current wife, Teresa Davis, in September 2011, or with Nicole since December 2012. Angela also claimed that Gary's income had increased since the divorce. Gary filed an answer and a counterclaim for contempt and for modification, seeking sole custody of the children.

¶3. In February 2014, the chancellor appointed a guardian ad litem (GAL) to make recommendations as to the termination of Gary's parental rights. After a hearing on the matter, the chancellor denied Angela's requests to (1) terminate Gary's parental rights, (2) modify custody/visitation, and (3) increase the amount of child support. But the chancellor did order Gary to pay Kristin's and Nicole's private-school tuition as long as both girls continued to visit Gary. Finally, the chancellor ordered that Gary could execute a power of attorney allowing Teresa to have access to the children's school records while Gary was working out of town.

¶4. Angela filed a motion to alter or amend the judgment, for reconsideration, and for a new trial, which was denied. Angela appeals, asserting the chancellor erred by failing to: (1) modify Gary's custody/visitation; (2) increase child-support payments; and (3) follow the GAL's recommendation. Angela also argues the chancellor should not have allowed Teresa

2

access to the children's school records.

**FACTS**

¶5.     Since the 2004 divorce, Gary began working out of state for months at a time, which directly impacted his visitation with the children. Gary stated that if he was out of town, the children would still go for visitation with Teresa and Marissa, Gary and Teresa's daughter. Immediately prior to trial, Gary had been working out of state for four months straight. The record indicates that Gary had timely paid his child support and had bought the children school clothes and school supplies.

¶6.     Testimony during the hearing indicated that Kristin and Gary got into an argument during the children's visitation in September 2011, and Teresa stepped in to restrain Kristin. Gary took Kristin to stay with Angela's father, but Nicole stayed with Gary and Teresa for the remainder of her visitation. According to Angela, Kristin did not want to visit Gary after this episode.

¶7.     Angela stated that Nicole did not want to visit Gary after hearing Gary yell at Angela on one occasion. But Angela did admit that Nicole wants a relationship with Gary. Both children take medication for ADHD, and both have varying degrees of dyslexia. While enrolled in the local public school, Kristin had failing grades and repeatedly got into trouble. Around August 2012, Kristin started cutting herself, and she began to see a therapist. Angela eventually moved both children to Heidelberg Academy. Angela admitted that she did not inform Gary when she moved the children to the new school. By all accounts, both children had been performing well at their new school.

3

¶8. Angela admitted that she stopped encouraging the children to visit or contact Gary. Gary testified that he tried to reach Kristin by texting or calling, but Kristin did not respond.

¶9. The GAL testified that neither Angela nor Gary was completely at fault for their current situation with the children. The GAL opined that Kristin had a bad attitude generally, and not solely due to her relationship with Gary. The GAL determined Gary's parental rights should not be terminated. Although not required to do so, the GAL recommended that Angela have primary custody of the children and Gary have visitation "because that is how they have been operating since the date of divorce."

¶10. Gary's Rule 8.05[2] financial-disclosure statement indicated his net monthly pay was $7,423. And his total living expenses, which included insurance payments of $928 per month, were $6,566. Gary testified that he thought his net monthly pay at the time of the divorce in 2004 was approximately $4,000.

## STANDARD OF REVIEW

¶11. When supported by substantial evidence, a chancellor's findings will not be disturbed on appeal unless the chancellor abused his discretion, was manifestly wrong, was clearly erroneous, or applied an erroneous legal standard. *Strait v. Lorenz*, 155 So. 3d 197, 203 (¶19) (Miss. Ct. App. 2015). However, questions of law are reviewed de novo. *Id.*

## DISCUSSION

### I. Modification of Custody/Visitation

¶12. In her first issue, Angela claims the chancery court should have modified

---

[2] UCCR 8.05.

4

custody/visitation. According to the child-custody, support, and property-settlement agreement, Gary and Angela have "joint legal and joint physical custody." But, in actuality, Angela is the custodial parent, and Gary is the noncustodial parent with visitation. Angela is not appealing the issue of termination of parental rights. It seems Angela would like to change the child-custody, support, and property-settlement agreement to reflect what is already in practice—physical custody to Angela and visitation to Gary. We reiterate that Gary also filed a counterclaim for modification, seeking sole custody of the children.

¶13. Angela argues the physical and verbal abuse, the children's mental issues, the children's feelings toward Gary, and Gary's limited contact with the children constituted a material change in circumstances that adversely affected the children's welfare. Gary argues the incident between Teresa and Kristin was an isolated incident. And he denies yelling at Angela in front of Nicole.

¶14. "To modify child custody, 'the non[]custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interest mandates a change of custody.'" *Strait*, 155 So. 3d at 203 (¶20) (quoting *A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1013 (¶24) (Miss. 2012)). "The chancellor must consider the totality of the circumstances." *Id.*

¶15. The chancellor found the following:

> There has not been a material change in circumstances in the custodial home of either parent adverse to the best interest of the children since the divorce

5

decree, and therefore no *Albright*[3] analysis was conducted by the court. The modification requests by both parties concerning custody and visitation are denied, and the custody and visitation set forth in the original divorce decree shall remain in full force and effect. It is understood that Gary's work schedule prevents a fixed schedule for visitation. However, Gary shall provide [seventy-two] hours notice to Angela of his intent to visit with the children, and his visitation shall take precedence over any other activities of the children.

Upon review of the record, we cannot find the chancellor abused his discretion in denying both parties' petitions for modification. The evidence presented failed to show a material change in circumstances had occurred. This issue is without merit.

## II. Modification of Child Support

¶16. In her second issue, Angela claims the chancery court should have increased the amount of child support. Angela argues that the children's increased medical expenses, their need to attend a private school, and Gary's increased income constituted a substantial or material change in circumstances.

¶17. An award of child support is governed by Mississippi Code Annotated section 43-19-101 (Rev. 2015). The guidelines establish that there is a rebuttable presumption that an award of child support should be twenty percent of the noncustodial parent's adjusted gross income where two children are due support. "A chancellor may modify child support if there has been a substantial or material change in the circumstances of one or more of the interested parties [–] the father, the mother, and the child or children [–] arising subsequent to the entry of the decree to be modified." *Curry v. Frazier*, 119 So. 3d 362, 366 (¶15) (Miss. Ct. App. 2013).

---

[3] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶18. Although the chancellor did not grant an upward modification of Gary's monthly child-support payments, the chancellor did order Gary to pay the children's private-school tuition. The chancellor specifically stated, "[T]he children do have special needs for unusual educational expenses which will require them to remain enrolled in Heidelberg Academy such that it would be unjust or inappropriate not to deviate from the current $500 and require Gary to pay the children's tuition." Angela testified that tuition for both children was approximately $900 per month. As a result, Gary would be paying approximately $1,400 per month in child support. We cannot find the chancellor abused his discretion in this instance. This issue is without merit.

### III. GAL Recommendations

¶19. In her third issue, Angela claims the chancery court should have followed the GAL's recommendation as to the modification-of-custody/visitation issue, or it should have provided written findings as to why the GAL's recommendations were not followed.

¶20. "Our supreme court does not require a chancellor to follow the findings of a GAL." *In re N.B.*, 135 So. 3d 220, 228 (¶35) (Miss. Ct. App. 2014) (citing *S.N.C. v. J.R.D. Jr.*, 755 So. 2d 1077, 1082 (¶17) (Miss. 2000)). "However, 'when a chancellor's ruling is contrary to the recommendation of a statutorily required GAL, the reasons for not adopting the GAL's recommendation shall be stated by the court in the findings of fact and conclusions of law.'" *Id.* (quoting *S.N.C.*, at 755 So. 2d 1082 (¶18)).

¶21. Here, the GAL was appointed solely to investigate the termination of parental rights. The GAL recommended that Gary's parental rights not be terminated, and the chancery court

followed the GAL's recommendation. Since the GAL was not appointed to investigate the modification-of-custody/visitation issue, we cannot find the chancellor erred in failing to state his reasons for not adopting the GAL's recommendations regarding custody and visitation.

### IV. Power of Attorney

¶22. Finally, Angela claims the chancery court should not have given Gary's wife, Teresa, access to Kristin's and Nicole's records. Angela argues neither party requested this. First, the chancellor did not automatically give Teresa access to the children's school records. The chancellor gave Gary the opportunity to allow Teresa access by way of a power of attorney. Second, the chancellor noted that a power of attorney would allow Teresa to get important information from the school regarding the children if Gary was out of town for a long period of time. We find no error by the chancellor in so ruling. This issue is without merit.

¶23. **THE JUDGMENT OF THE CHANCERY COURT OF COVINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**